UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**JS-6 / TRANSFER**

| | | | |
|---|---|---|---|
| Case No. | **CV 16-8571 DMG (PLAx)** | Date | June 2, 2017 |
| Title | ***Medline Industries, Inc. v. Kimberly-Clark Corporation, et al.*** | Page | 1 of 5 |

Present: The Honorable DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| KANE TIEN | NOT REPORTED |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER ACTION TO THE NORTHERN DISTRICT OF GEORGIA [37]**

## I.
## BACKGROUND

Plaintiff Medline Industries, Inc.'s operative First Amended Complaint ("FAC") alleges four fraud-based claims against Defendants Kimberly-Clark Corporation and Halyard Health, Inc.: (1) false advertising and promotion under the Lanham Act, 15 U.S.C. § 1125(a); (2) violation of California's False Advertising Law ("FAL), Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (4) common law unfair competition. ("FAC") [Doc. # 32.]

Defendants move to dismiss Medline's UCL and FAL claims, and transfer the action to the Northern District of Georgia. For the reasons set forth below, the Court **GRANTS** Defendants' motion to transfer this action to the Northern District of Georgia. The Court **DENIES** Defendants' motion to dismiss without prejudice.

## II.
## ANALYSIS

### A. Motion to Transfer

#### 1. Legal Standard

A district court may transfer an action to a different district court under 28 U.S.C. § 1404(a). Section 1404(a) permits a court to transfer an action "[f]or the convenience of parties and witnesses" and "in the interest of justice" so long as the action could have been filed in the transferee district in the first instance. 28 U.S.C. § 1404(a); *see also Sparling v. Hoffman Constr.*

*Co., Inc.*, 864 F.2d 635, 639 (9th Cir. 1988) (the district court has broad discretion to transfer a case to another district where venue is also proper). The district court must "adjudicate motions for transfer [of venue] according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotes omitted)).

The burden is generally on the moving party to establish that a transfer will allow a case to proceed more conveniently and better serve the interests of justice. *See, e.g.*, *Commodity Futures Trading Comm. v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

**2. Northern District of Georgia**

Defendants submit evidence establishing that this action could have been brought in the Northern District of Georgia in the first instance. *See generally* Declaration of Judson Booth (Halyard's principal place of business is in Alpharetta, Georgia; Kimberly-Clark conducts a significant amount of business related to Medline's allegations in Georgia; Defendants made all advertising, marketing, promotional, and development decisions in connection with the products at issue in the Northern District of Georgia) [Doc. # 37-2]. Plaintiff does not contest Defendants' assertions regrading whether this action could have been filed in the transferee district in the first instance.

Accordingly, the Court finds that the Northern District of Georgia is a district in which this action "might have been brought." 28 U.S.C. § 1404(a).

**3. Convenience Factors and the Interests of Justice**

In the Ninth Circuit, courts may consider the following factors in assessing a motion to transfer venue:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99.

**i. Convenience of Witnesses**

The convenience of witnesses is accorded significant weight in determining whether to transfer an action pursuant to Section 1404. *See, e.g.*, *Denver & Rio Grande W. Ry. Co. v. Bhd. of R.R. Trainmen*, 387 U.S. 556, 560 (1967) ("[V]enue is primarily a matter of convenience of litigants and witnesses."); *A.J. Indus. v. U.S. District Court*, 503 F.2d 384, 386–87 (9th Cir. 1974) (discussing the importance and history of the convenience of witnesses in evaluating a Section 1404 transfer); *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009) ("The convenience of witnesses is often the most important factor in determining whether a transfer under § 1404 is appropriate.").

In assessing whether the convenience of the witnesses favors transfer, the Court must consider both the location and number of witnesses each side has and the relative importance of those witnesses. *Fontaine v. Washington Mut. Bank, Inc.*, 2009 WL 1202886, at *3 (C.D. Cal. Apr. 30, 2009) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984)). The Court accords more weight to the inconvenience of non-party witnesses, as party witnesses can be compelled to testify regardless of the forum in which the case is litigated. *See Applied Elastomerics, Inc. v. Z–Man Fishing Prods., Inc.*, 2006 WL 2868971, *4 (N.D. Cal. Oct. 6, 2006) (citing *STX, Inc., v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) (discounting the inconvenience of witnesses who were employees of one of the parties because they could be compelled to testify)).

Here, both Defendants and Medline identify party witnesses who reside in their venue of preference. *See* Booth Decl. ¶ 10 (potential witnesses involved in the advertising, marketing, promoting, and development of the products at-issue in this action live near Alpharetta, Georgia, which is within the Norther District of Georgia); Declaration of Amanda Laabs ("Laabs Decl.") ¶¶ 6, 10–11 (identifying Medline employees in California and within the Northern District of Illinois) [Doc. # 40-4].

As for non-party witnesses, Medline surmises that given the size of Medline's sales in California, "[t]here may be California customers . . . that are non-party witnesses that may be able to testify" about the impact of the alleged fraudulent misrepresentations and omissions on Plaintiff's and Defendants' sales of the products at issue. Opp. at 20; *see* Laabs Decl. ¶ 9. Medline does not identify any of these customers. In any event, the Court is not convinced that a jury would need to hear from more than a handful of such customers, if any, at trial. For their part, Defendants contend that certain key non-party witnesses (e.g., former Kimberly-Clark Vice President of Global Research and Engineering Vince Torturro, former Kimberly-Clark Vice

President of Global Sales and Marketing John Amat) reside in the Northern District of Georgia. Booth Decl. ¶ 10. These witnesses will testify to the advertising, research, marketing, promotion, and development of the alleged defective products, issues central to this case. *Id.*

The Court finds that most of the potential non-party witnesses whose testimony will go to the core of the disputed factual matters presented in this action reside in the Northern District of Georgia. Therefore, this factor weighs in favor of transfer. *See Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009) (convenience weighed in favor of transfer to the forum where the majority of potential witnesses reside).

**ii. Plaintiff's Choice of Forum**

Generally, there is a strong presumption in favor of a plaintiff's choice of forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.") (citation omitted). This presumption may be rebutted if the chosen forum lacks a significant connection to the activities that underlie the matters at issue. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration."). A foreign plaintiff's choice of forum, however, is accorded less deference than a local plaintiff's choice would be. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157 (S.D. Cal. 2005) (citing *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)).

Here, while Medline has chosen to litigate in California, it is a resident of Illinois. Thus, this choice-of-forum factor weighs only slightly against the transfer. *See* FAC ¶ 2. Moreover, even though the FAC mentions and includes California as an example of where the alleged wrongs took place, the FAC does not limit its allegations of fraud against Defendants to actions and events that took place in California. *See, e.g.*, *id.* ¶ 48 ("Medline sells its gowns throughout the United States, including in California and in this judicial district.").

**iii. Contacts Relating to Plaintiff's Claim**

Medline argues the harm it suffered—diversion of sales from its own product—from Defendants' alleged false representations and material omissions "occurred anywhere these diversions occurred, which includes the Central District of California." Opp. at 23. Again, the FAC does not limit Medline's harm to only California. *See, e.g.*, FAC ¶ 57 ("As a result of Defendants' conduct, Medline has been injured by diversion of sales of its products to

Defendants' products, and/or by lessening of the goodwill which its products enjoy with the buying public.").

On the other hand, the alleged events vital to this action—the development of and decision to perpetuate allegedly false and misleading representations—and the people with the most knowledge of these events are in the Northern District of Georgia. Based on the foregoing, this factor weighs marginally in favor of transfer.

#### iv. Familiarity with Governing Laws

Defendants concede that "the Central District of California's familiarity with California state law claims somewhat favor the Central District of California." Mot. at 23. While the Court generally agrees with this, the Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (citations omitted). Because Medline's UCL claim is comparable to its federal law claim for false advertising under the Lanham Act, the Northern District of Georgia is certainly capable of resolving that claim. That being said, this factor weighs slightly against transfer.

In balancing all of the foregoing factors, the Court finds that transfer of this action to the Northern District of Georgia is appropriate both for the sake of witness convenience and in the interests of justice. In the alternative, Medline requests that the Court transfer the action to the Northern District of Illinois. The factors discussed above, however, weigh more in favor of transferring the action to Georgia, especially given the location of the non-party witnesses with knowledge concerning the alleged fraudulent misrepresentations and omissions.

## III.
## CONCLUSION

In light of the above, Defendants' motion to transfer is **GRANTED**. This action is transferred to the United States District Court for the Northern District of Georgia. Defendants' motion to dismiss Medline's UCL and FAL claims is **DENIED** without prejudice to being reasserted in the transferee district.

**IT IS SO ORDERED.**